UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SARA L. CONNER | CIVIL ACTION NO. 15-1649 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TANIA N NANNA, ET AL. | MAG. JUDGE CAROL WHITEHURST |

RULING

Plaintiff Sara Conner ("Conner") brought this case against the United States Department of Agriculture ("USDA"); Secretary of the Department of Agriculture Tom Vilsack ("Vilsack"), and Tania Nanna ("Nanna") under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("The FTCA") for the alleged negligence of Nanna, an employee of the USDA. At this point, however, the only remaining Defendant is the United States.

Pending before the Court is "Plaintiff's Appeal of the Magistrate's Order Denying the Plaintiff's Motion for Leave to Amend Initial Damages Calculation" [Doc No. 19]. For the following reasons, the Appeal is DENIED, and the Magistrate Judge's Order [Doc No. 18] is AFFIRMED.

**I.   FACTS AND PROCEDURAL HISTORY**

The Plaintiff in this matter is Conner, a 38-year-old woman. At the time of the events in question, Conner was studying at the University of Louisiana-Lafayette to obtain her doctorate degree in biology ("PhD").

On October 24, 2012, Conner was involved in an automobile accident involving Nanna, an employee of the USDA. Conner contends, and, at least for purposes of this motion, the United States does not appear to dispute, that Nanna was acting within the course and scope of her employment

when the accident occurred.

In compliance with the FTCA, Conner submitted a summary of her injuries and damages known at the time, along with a Standard Form 95 ("SF-95"), to the USDA on June 2, 2014. At that time, Conner calculated her damages to be $368,762.28. In the SF-95, Conner alleged the following injuries to form the basis of her claim:

> Ms. Conner suffered concussion with resulting cognitive problems, cervical herniations, shoulder, thoracic, knee and right rib fractures and pain. Ms. Conner suffered from blurred vision, residual cognitive impairment, difficulty differentiating letters, memory loss, and has required evaluation from a neuro-psychological standpoint. Her complaints of pain and the nature and duration of same are set out in the attached memorandum and medical records from her treating physicians.

[Doc. No. 19-4, Standard Form-95-Initial Damages Submission].

Importantly for purposes of this appeal, in an attached memorandum to the SF-95, Conner clearly indicated that she foresaw potential problems with completing her PhD on time. Specifically, the memorandum states, "Ms. Conner had been scheduled to graduate before the accident in the fall of 2013. It is anticipated that she now may graduate in or after the Fall of 2014. Further, this delay made her ineligible for continued financial aid/education loans at school." *Id*.

Following the submission of this claim, an administrative proceeding was held. The USDA issued a denial letter to Conner on or about April 30, 2015, over ten months after her initial submission.

Shortly after the claim's submission and well before the agency's decision to deny Conner's claim, around August of 2014, Dr. Raymond Bauer ("Dr. Bauer") notified Conner that she needed to redo her research for her research article intended for the Sexuality and Early Development in Aquatic Organisms Journal. In order to complete that research, Dr. Bauer informed Conner that she

would have to perform re-dissections of shrimp larvae from before the accident. Conner claims that these dissections require tedious, precise, and delicate work which was extremely difficult to complete after her accident. Moreover, Conner also indicates that she had problems securing financial aid which would allow her to complete her studies because she had exceeded the semesters for which she was eligible for student loans. Because of these complications, Conner has not been able to obtain her PhD. Conner did not move to amend her damage claim while it was pending before the USDA.

After these complications, Conner retained Dr. T. Scott Smith ("Dr. Smith"), a professor at the University of Louisiana-Lafayette and vocational rehabilitation counselor, to evaluate the impact of the accident on Connor's ability to obtain her PhD. The expert opines that Conner's earning capacity will be diminished by not being able to graduate on time. This expert report was provided to economist Dr. Randy Rice who relied on Smith's report to estimate Conner's damages to range between $506,556.00 and $1,064,693.00 based on her inability to obtain a PhD in the Fall of 2014 as she had originally intended.[1]

On May 3, 2016, Conner moved for leave to amend her initial damage calculation from $368,762.28 to $1,433,455.00. [Doc. No. 14]. The parties briefed the issue. On June 15, 2016, Magistrate Judge Whitehurst held a hearing on the issue. She denied the motion for leave. [Doc. No. 18]. She did not issue written reasons.

On June 22, 2016, Conner appealed Magistrate Judge Whitehurst's decision to this Court. The parties filed various memoranda.

---

[1]It is somewhat unclear whether this expert report estimates the damages with the understanding that Conner would never obtain her PhD, or whether her progress was merely stymied. Conner's briefing speaks of delay, not an indefinite inability to secure the PhD.

## II. LAW AND ANALYSIS

### A. Standard of Review

Magistrate Judge Whitehurst denied Conner's motion to amend her claimed damages. Given the non-dispositive nature of the ruling, it will not be overturned unless it is clearly erroneous. *See Cargo v. Kansas City Southern*, 05-2010, 2009 WL 541318 at *3 (W.D. La. March 4, 2009) (citing *PYCA Indus., Inc. v. Harrison Co. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421, n. 11 (5th Cir. 1996). Under the clearly erroneous standard, "the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Rubin v. Valicenti Advisory Svcs., Inc.*, 471 F.Supp.2d 329, 333 (W.D.N.Y. 2007). Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B. Damage Calculations Under the FTCA

Through the FTCA, Congress has waived sovereign immunity for a certain class of tort claims. "The federal district courts have exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of a government employee 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the omission occurred.'" *Singletary v. U.S.* 05-4000, 2006 WL 3240769 at *3 (E.D. La. Nov. 6, 2006) (quoting 28 U.S.C. § 1346(b)).

Prior to initiating an FTCA suit in federal court, a potential claimant is required to exhaust administrative remedies which include attempting to settle the matter with the relevant federal

agency. *See Robinett v. State Farm Mut. Auto Ins. Co.*, 02-0842, 2002 WL 1822933, at *2 (E.D. La. Aug. 8, 2002) (citations omitted). And as part of that process, the claimant is required to present a claim to the relevant agency. Usually, the claim will constrain the amount of damages recoverable in the actual litigation. Title 28 United States Code Section 2675(b) provides:

> action under this section shall not be instituted for a sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts relating to the amount of the claim.

The agency has also promulgated a regulation that provides an amendment mechanism to correct claims pending before the agency. However, some courts, including one within the Fifth Circuit, have held that a plaintiff does not have an affirmative duty to amend its claims. *See Singletary*, 2006 WL 3240769 at *4, n. 32. At least according to those courts, failure to use this mechanism does not prevent the plaintiff from later seeking to take advantage of 28 U.S.C. § 2675(b)'s exceptions for amending the damage amount sought. *Id.; but see Wilson v. U.S.*, 12-824, 2012 WL 6761368 at *2 (D.Md. Dec. 28, 2012) (denying motion to amend claim under the FTCA, in part, because the Court found plaintiff had opportunity to amend claim before final agency decision and did not do so).

The Fifth Circuit applies a two-part test to gauge whether amendment under Section 2675(b) is appropriate. "[T]here is first a subjective test as to whether the specific injuries were known at the time the administrative complaint was made. Then there is an objective test as to whether the plaintiff could have made out its **worst-case scenario** based on the basic severity of the injuries that were known." *Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (citation omitted) (emphasis added). Further clarifying that standard, the Fifth Circuit has noted that a court must first

5

ask whether "the post-claim evidence as to the extent of the injuries, the prospects of recovery, the extent of recovery, and of the life expectancy could not have been discovered at the time the plaintiff filed its administrative claim." *Id*. at 475-476. Next, the Court should ask whether "these facts represent newly discovered evidence or intervening facts for purposes of § 2675(b)." *Id*

According to the *Dickerson* Court, the second prong of the analysis has multiple components. Initially, the evidence must support the proposed increase to the damage amount. "Next, the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed." *Id*. "New information 'can be newly discovered evidence or an intervening fact...if it sheds new light on the basic severity of the claimant's condition–that is, if it materially differs from the worst case prognosis of which the claimant knew or could reasonably have known when the claim was filed.'" *Singletary*, 2006 WL 3240769 at *4 (quoting *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002) (citation omitted).

In all, the reluctance to allow amendment is justified because, by forcing the claimant to come forth with his worst-case scenario based on the evidence reasonably available at the time of submission to the administrative agency, the FTCA encourages settlement. It also puts the risk of error on the claimant as opposed to the sovereign (the United States) because its liability may be enforced only with its consent:

> As between a prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the **worst-case scenario** or, if uncertain, to paint the picture as bleakly as reason permits and conscience allows. If a plaintiff misjudges, as to matters known or easily deducible when her claim is filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign.

*Reilley v. United States*, 863 F.2d 149, 173 (1st Cir. 1988) (emphasis added).

The burden of establishing "newly discovered evidence" or "intervening facts" falls on the claimant. *Kielwien v. United States*, 540 F.2d 676 (4th Cir.), *cert denied*, 429 U.S. 979 (1976) (citations omitted).

### B. The Parties' Arguments and Application

#### 1. *The United States*

The United States points to the pertinent regulation which allows a claimant to amend his damage claim before the agency makes a decision on the claim. In this case, it is clear that Conner knew she would have to redo her project approximately two months after she submitted her initial claim, but well before the agency made an ultimate decision. According to the United States, Magistrate Judge Whitehurst found this to be a salient point.

Further, the United States directs the Court to the memorandum accompanying the SF-95 in which Connor indicated that she was having trouble graduating on time. Specifically, she indicated that "Ms. Conner had been scheduled to graduate before the accident in the Fall of 2013. It is anticipated that she now may graduate in or after the Fall of 2014. Further, this delay made her ineligible for continued financial aid/education loans at school." Thus, it appears that Conner knew about the difficulty graduating–if not the specific reasons for that difficulty (i.e. having to redo the project). She also may not have known how long her graduation would be delayed, but she was aware, even then, that there might be some delay which would result in student loan issues.

#### 2. *Conner*

Conner essentially claims–despite statements to the contrary in her SF-95 memorandum–that a tardy graduation and accompanying loan issues were unforeseeable at the time the form was submitted. Thus, according to Conner, the SF-95 encompassed the "worst-case scenario" at the time

of submission and to require a more dreary worst-case scenario would require speculation.

Conner also claims that the expert report from which she acquired her new sum was unavailable at the time of the claim submission. Therefore, she contends, it constitutes new evidence under the FTCA which would allow her to amend the claim.

Finally, Conner argues that the emphasis on a "worst-case scenario" at the time of submission is a judicial construct with no basis in the statute's plain language which speaks of newly discovered evidence not reasonably discoverable and intervening facts. Such a statutory interpretation, according to Conner, places an unfair burden on the plaintiff. Here, Conner's argument appears to be that there were clearly intervening facts between the time she submitted her claim and its denial. Thus, this case fits under the statute's plain language.

### 3. *Analysis*

The Court agrees with Magistrate Judge Whitehurst and the United States.[2] Applying the *Dickerson* analysis, the Court first notes that Conner was aware of her injuries at the time of her initial submission to the United States, including her potential inability to graduate on time. While it is true that Conner was unaware she would be required to redo her dissections, she was aware that the accident had placed a timely graduation in jeopardy. This realization should have prompted her to engage an expert to help make out a worst-case scenario based on a delay in the receipt of her degree or the inability to obtain a degree. So, while there were intervening facts such as Conner having to repeat the dissection, these facts did not affect Conner's ability to come to the agency with a worst-case scenario under the second step of the *Dickerson* analysis. Although Conner may have

---

[2] The Court agrees with Magistrate Judge Whitehurst's ultimate result. However, the Court does not reach the issue of whether Conner had a duty to amend her claim under 45 C.F.R. § 35.2(b) (2012) in order to take advantage of Section 2765(b).

suspected a different reason for the delay, the fact remains that she did realize that delay was likely. She also knew this delay might result in difficulty securing a loan.

Moreover, to accept Conner's argument that the expert report constitutes newly discovered evidence, the Court must disregard the requirement that such evidence was **not reasonably discoverable** at the time of submission. In this case, knowing that delay was likely or possible, Conner, in preparing for a worst-case scenario, could reasonably have discovered the economic ramifications of a lately-obtained degree. *See Wilson,* 2012 WL 6761368 at *2 (denying leave to amend where plaintiff argued that economist report secured during discovery was newly discovered evidence).

### III.   CONCLUSION

For these reasons, Conner's Appeal [Doc. No. 19] is DENIED, and Magistrate Judge Whitehurst's Order [Doc. No. 18] is AFFIRMED.

MONROE, LOUISIANA, this 15th day of August, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE